## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 03-10095 |
| | ) | |
| PETER J. ZACCAGNINO III, | ) | |
| GIGI ANNE ZACCAGNINO, and | ) | |
| WENDELL S. GATES, JR., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is the Government's Motion to Deny Claim of Third Party Interest in $1 million. For the reasons set forth below, the Government's motion [#139] is GRANTED.

**BACKGROUND**

This case involves a criminal forfeiture pursuant to 18 U.S.C. § 982. The following summary of relevant facts is primarily adopted from the Government's Memorandum Regarding the Forfeiture of $1 Million. (*See* Docket Entry #151.)

From approximately June 1997, through April 9, 2002, Wendell Gates, Gigi Zaccagnino, and Peter Zaccagnino engaged in a scheme to defraud investors of over $20 million through a "high yield" investment program. These individuals used a number of corporate entities, including New Millennium Management ("NMM") a Florida corporation, to divert investors' funds and launder the proceeds of their fraud. There is no dispute that the transfer of the $1 million at issue in this case to the account in Switzerland was part of the fraudulent scheme.

On November 22, 1999, Gates, wire transferred $1 million from a NMM bank account to the account of Mr. Liam Skelley in Switzerland. The account was frozen upon the order of the Swiss authorities at the request of the United States Department of Justice..

On April 9, 2002, Gates, on behalf of NMM, filed bankruptcy in the Middle District of Florida. An automatic stay was issue pursuant to Title 11 U.S.C. § 362(a)(1).

On January 26, 2003, Gates and the Zaccagninos were indicted in the Central District of Illinois. A supercedeing indictment was filed on January 20, 2005. Both indictments contained forfeiture allegations whereby the Government sought the forfeiture of a number of the Defendants' properties, including the $1 million in Switzerland.

On July 21, 2003, the Government filed an in rem action in this Court regarding the $1 million. *See United States v. $1,000,000,* 03-CV-1236 (C.D. Ill., July 21, 2003).

On May 6, 2004, the Bankruptcy Trustee for the NMM bankruptcy filed an adversary proceeding against Liam Skelley and the Swiss bank asserting a claim to the $1 million alleging that the $1 million was part of the NMM bankruptcy estate. The Trustee did not provide notice to the United States of the adversary proceeding. The Bankruptcy Trustee obtained an order of default against Skelley and then filed a Motion for Summary Judgment asking the Bankruptcy Court to enter judgment declaring that the $1 million was the property of the NMM estate, that Liam Skelley has no interest in such money, and that the estate is entitled to have the money turned over to it. In the Memorandum accompanying its Motion for Summary Judgment, the Trustee stated that the Swiss bank (formerly Bank Adamas and now known as Bipielle Bank) froze the funds at the request of the United States Department of Justice because of a suspicion that the funds were involved in a money laundering scheme. Later in the Memorandum, the

Trustee informed the Bankruptcy Court "[t]here is no suggestion or indication that the United States has sought to seize the funds for itself or for any other distribution to defrauded investors."

On March 4, 2005, the Bankruptcy Court entered summary judgment in favor of the Bankruptcy Trustee and found that the funds in the Swiss bank were actually property of the bankruptcy estate. In its Order, the Bankruptcy Judge noted that the Swiss bank account had been frozen at the request of the United States but that there was no suggestion or indication that the United States sought the money for itself or to distribute to defrauded investors.

On April 1, 2005, Wendell Gates pled guilty to multiple counts of the superceding indictment, as well admissions to the forfeiture allegations.

On May 16, 2005, this Court entered a Preliminary Order of Forfeiture relating to Wendell Gates' interest in the properties listed in the superceding indictment, including the $1 million in the Swiss bank account.

In July 2005, the Bankruptcy Trustee filed a third party claim to the $1 million in this Court. The Government responded to the Bankruptcy Trustee's claim by filing a Motion to Deny the claim. The Bankruptcy Trustee responded to the Government's motion and the Court held both a telephone and an in-person hearing on the motion. As a result of the in-person hearing on January 12, 2006, the Court ordered both the Trustee and the Government to file supplemental briefs on the issue of who is rightfully entitled to the $1 million.[1] As the issues are now fully briefed, this Order follows.

---

[1] It should be noted that this Court is only addressing the issue of who between the Government and the Trustee is entitled to the $1 million if and when the Swiss authorities decide to release the money. At present, the Court has been informed that the Swiss authorities have not yet made a determination if they will release the money. Both parties have presented theories on how they will seek to obtain the money in the event that the Swiss authorities agree that the money should be released. Accordingly, this Court is only addressing the question of who properly has the right to proceed to obtain the money if the Swiss government releases the money.

## DISCUSSION

As an initial matter, the Bankruptcy Trustee's argument that the Government is not the proper entity to recoup the money because if it does, the Government "has arrogated to itself the judicial function of weighing the rights of competing claimants and determining the quantum of proof necessary to participate in distribution" is not persuasive. (Trustee's Memo., Feb. 21, 2006, at 4.) In making this argument, the Bankruptcy Trustee overlooks the fact that the Government has filed an in rem action with respect to this money. As the Federal Rules of Civil Procedure (as supplemented by the Supplemental Rules of Certain Admiralty and Maritime Claims) provide a procedure for the Government to follow in cases where the Government has recouped property resulting from a crime, the Government's use of an in rem action is the proper method to ensure that the judiciary makes the ultimate decision on how the money should be distributed.

The main issue in this case is whether the Government or the NMM bankruptcy estate is entitled to the $1 million. The Government argues that it is entitled to the $1 million because under the "relation-back" doctrine all rights, title, and interest in the $1 million vested in the United States at the time that Gates committed the criminal act giving rise to the forfeiture, namely when he transferred the $1 million to Switzerland in violation of 18 U.S.C. § 1962(d) (RICO conspiracy) and 18 U.S.C. § 1956(h) (money laundering). In response, the Bankruptcy Trustee argues that the relation back doctrine does not apply in this case because the transferor of the $1 million was NMM and not Wendell Gates. Specifically, that Trustee claims that the Government does not have the authority to forfeit property belonging to NMM because NMM was not a defendant in the criminal case and Wendell Gates' guilty plea is not binding on NMM.

Although the Bankruptcy Trustee's argument may be persuasive if NMM had multiple shareholders and Wendell Gates was only one of many individuals with signatory authority on the NMM accounts, the facts of this case are such that the Government properly sought the forfeiture of the $1 million even though the money was transferred to Switzerland by NMM and not Wendell Gates. Here, Wendell Gates was the sole shareholder of NMM, held signatory authority on all of the NMM accounts, and had sole signatory authority on the primary NMM account. Additionally, Wendell Gates admitted in his plea that:

> The evidence would further establish that New Millennium investor funds were deposited into New Millennium accounts, which were under the control of the defendant, as previously stated; that the defendant caused the transfer of investor funds from the accounts, including the wire transfer of $1 million to an account in Switzerland.

(Transcript of Gates' Plea Agreement Hearing, Apr. 1, 2005, at 28.) Accordingly, under the criminal forfeiture statute, *see* 18 U.S.C. § 982(a)(1), the Court properly ordered the preliminary forfeiture of the $1 million to the United States. Title 18 U.S.C. § 982(a)(1) states:

> The court, in imposing sentence on a person convicted of an offense in violation of section 5313(a), 5316, or title 31, or of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

18 U.S.C. § 982(a)(1).

In the instant case, Gates pled guilty to 18 U.S.C. § 1962(d) and 18 U.S.C. § 1956(h) and admitted that the $1 million dollars was used as part of the scheme to defraud investors. Therefore, as this money is clearly traceable to the relevant criminal activity, 18 U.S.C. § 982(a)(1) authorized the Government to seek its forfeiture.

Presumably, the Bankruptcy Trustee would argue that even if the Government was entitled to the forfeiture of the money in a normal situation where the sole shareholder pled guilty to crimes, that this situation is very different because the bankruptcy estate had already

5

been created at the time that Gates entered his plea of guilty. In response, the Government argues that this $1 million was never properly part of the bankruptcy estate because of the relation-back doctrine. "Once the Government wins a judgment of forfeiture, the relation-back doctrine provides that the right, title, and interest in the forfeited property vests in the United States at the time the defendant committed the offense that gives rise to the forfeiture." *United States v. Emerson*, 128 F.3d 557, 567, n. 5 (7th Cir. 1997). Here, the claim to the $1 million filed by the Bankruptcy Trustee has resulted in the Court delaying the entry of the Final Order of Forfeiture in this case, thereby preventing the Government from securing a judgment of forfeiture in this case. Accordingly, one could argue that the relation-back rule as stated in *Emerson* does not apply in this case because the Government has not achieved a judgment of forfeiture until the Final Order of Forfeiture is entered. However, the underlying policy behind the relation-back doctrine does not require such a strict application of the rule.

In the current situation, if the Bankruptcy Trustee had waited until the Final Order of Forfeiture was entered to make his claim, then he would have lost his right to claim an interest in the $1 million. Here, the Trustee properly brought his claim after the Preliminary Order of Forfeiture was entered, but the success of his claim depends upon what date title to the money vested with the United States. Accordingly, to decide whether the Trustee's claim has merit, the Court must determine if the relation-back doctrine applies even though the Court has not entered its Final Order. Presumably, the policy behind waiting until the Final Order of Forfeiture is entered before the interest vests in the Government is to prevent the Government from using the relation-back doctrine to justify its disposition of the property before all of the claims to the money have been ruled on. As there is no indication that this is a problem in this case, the relation-back doctrine dictates that a criminal (Gates) forfeits his interest in property used in the

commission of a crime as of the date that the crime occurs. Therefore, the relation-back doctrine requires the Court to find that the Government's interest vested on November 22, 1999, the date that the money was transferred to Switzerland, two and a half years before the NMM bankruptcy estate was created. Accordingly, the Court finds that the Bankruptcy Trustee's claim to the $1 million being held in Switzerland does not have merit and the Government's motion to deny the claim is granted.

At first glance, this holding may appear to directly conflict with the holding of the Bankruptcy Court in Florida. However, the issue before the Bankruptcy Judge was who, as between the NMM estate and Liam Skelley, was entitled to the money. If the facts had been as the Trustee informed the Bankruptcy Judge, that the Government did not have an interest in the money, the Court does not doubt that the Bankruptcy Judge properly determined that the money belonged to the NMM estate and not Liam Skelley. However, in this case where the Government has asserted an interest in the money and the relation-back doctrine requires the Court to find that Government's interest vested prior to the creation of the estate, the result is that the bankruptcy estate never properly had title to the money.

It should be noted that upon initial review of the Government's Motion to Deny the Trustee's Claim to the $1 Million, this Court recognized that a ruling by this Court on the motion could potentially conflict with the Bankruptcy Court's ruling in the adversary proceeding. Accordingly, in the interest of comity, this Court suggested to the Government in a telephone hearing on December 2, 2005, that the Government should file a Motion to Reconsider with the Bankruptcy Court asking the Judge to reconsider his ruling on summary judgment based on the fact that the Government had an interest in recouping the $1 million. The Government decided not to do so, and therefore, this Court was left to rule on the pending motion. In the interest of

comity, this Court would have preferred that the Bankruptcy Court's order have been vacated prior to this Court deciding this issue. Nonetheless, the Court finds that title to the money vested in the United States prior to the creation of the bankruptcy estate.

## CONCLUSION

For the reasons set forth above, the Government's Motion to Deny Third Party Interest in $1 million [#139] is GRANTED.

ENTERED this 18th day of April, 2006.

                                          s/ Michael M. Mihm
                                          Michael M. Mihm
                                          United States District Judge